IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DOYLE WESLEY HUGHES and
HOLLY HUGHES                                                                                    PLAINTIFFS

v.                                              Case No. 1:22-cv-01020

REITNOUER, INC.;
REITNOUER ENTERPRISES, INC;
and STEADY SOURCE CO.
d/b/a STEADY LANES                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment (ECF No. 103) filed by Defendant Steady Source Co. d/b/a Steady Lanes ("Defendant Steady Source"). Plaintiffs Doyle Wesley Hughes ("Plaintiff Doyle") and Holly Hughes ("Plaintiff Holly") (together, "Plaintiffs") have responded.[1] (ECF No. 108). Defendant Steady Source replied. (ECF No. 114). The Court finds the matter ripe for consideration.

**I.   BACKGROUND**

This is a products liability and negligence case that arises from an accident that occurred on November 14, 2019. Plaintiff Doyle was driving a 2017 Ford Transit van ("the Transit") on the highway when he drove into the rear of a tractor-trailer owned by Defendant Steady Source, which caused the Transit to partially go under the rear of the trailer and catch on fire. The trailer was built by Defendant Reitnouer, Inc.

The details are as follows. On November 14, 2019, Plaintiff Doyle was traveling northbound on the highway in the Transit at 12:49 p.m. (ECF No. 104, at 1). At the same time, a tractor-trailer

---

[1] The Cout notes that Plaintiffs' initial brief (ECF No. 109) was withdrawn because Plaintiffs accidently filed a draft version of the brief. A substitute brief (ECF No. 120) was filed after the Court granted Plaintiffs' Motion to Substitute Brief. (ECF No. 119).

owned and operated by Defendant Steady Source was traveling northbound on the highway in front of the Transit operated by Plaintiff Doyle. (ECF No. 104, at 1). The tractor-trailer began to slow down as it approached a left turn on the road at which the driver of the tractor-trailer intended to turn. (ECF No. 104, at 1). Plaintiff Doyle did not adequately slow down the Transit, and it collided with the rear of the trailer. (ECF No. 110, at 2). The rear underride guard of the trailer broke off, which caused Plaintiff Doyle to under-ride the rear of the trailer. (ECF No. 104, at 2). The collision caused the Transit to catch on fire and seriously injured Plaintiff Doyle. (ECF No. 104, at 2). Defendant Steady Source purchased the trailer new on August 21, 2019, from Defendant Reitnouer, Inc., who built the trailer. (ECF No. 104, at 2). After the collision, the trailer was repaired before it could be conclusively determined whether the components of the trailer were in proper working order. (ECF No. 110, at 3).

On November 12, 2020, Plaintiffs filed this action in Columbia County Arkansas Circuit Court, and on January 31, 2022, Plaintiffs filed an Amended Complaint in state court. On March 28, 2022, a now dismissed defendant, Ford Motor Company, removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 2). In relevant part, Plaintiffs' lawsuit alleges claims of strict liability, breach of implied warranty, failure to warn, and negligence against Defendant Steady Source. (ECF No. 6, at 14-19).

On September 26, 2024, Defendant Steady Source filed the instant Motion for Summary Judgment. (ECF No. 103). Defendant Steady Source contends that Plaintiffs claims rest on the mistaken belief that Defendant Steady Source should be held liable under theories of strict products liability. (ECF No. 103, at 1). Defendant Steady Source argues that it cannot be held liable under strict products liability theories because it had no role in manufacturing or designing the trailer, and there are no allegations that it modified the trailer. (ECF No. 103, at 1-2).

In response, Plaintiffs admit that Defendant Steady Source is not liable under theories of strict products liability. (ECF No. 108, at 1). Plaintiffs agree that claims of strict liability, breach of

2

implied warranty, and failure to warn are only properly asserted against Defendants Reitnouer, Inc. and Reitnouer Enterprises, Inc. (ECF No. 108, at 1). However, Plaintiffs contend that the negligence claim against Defendant Steady Source is proper. (ECF No. 108, at 1). Additionally, Plaintiffs raise for the first time that Defendant Steady Source spoliated evidence and that spoliation of evidence should preclude summary judgment in favor of Defendant Steady Source. (ECF No. 120, at 7).

## II. STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. "Mere allegations,

unsupported by specific facts or evidence beyond the nonmoving part's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

### III.  DISCUSSION

The Court faces two issues in the instant motion: (1) whether Defendant Steady Source spoliated evidence; and (2) whether a genuine issue of material fact precludes a finding of summary judgment in favor of Defendant Steady Source on the negligence claim. The Court will review each in turn.

Before the above issues are reached, the Court notes that both Plaintiffs and Defendant Steady Source have agreed that claims of strict liability, breach of implied warranty, and failure to warn are not properly asserted against Defendant Steady Source. Thus, the Court finds that summary judgment is appropriate on Plaintiffs' strict liability, breach of implied warranty, and failure to warn claims against Defendant Steady Source.

#### A. Spoliation of Evidence

The Court must first address Plaintiffs' contention that Defendant Steady Source engaged in the spoliation of evidence and their request for an adverse inference instruction because of this alleged spoliation. Notably, Plaintiffs have neither raised this argument prior to this response nor filed a formal motion for the Court's consideration as required by Local Rule 7.2. However, even putting aside deficiencies and assuming this was a proper motion, the Court finds no evidence that Defendant Steady Source engaged in the spoliation of evidence.

"A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991)). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Schlafly v. Eagle F.*, 970 F.3d 924, 936 (8th Cir. 2020) (citation omitted). Abuses that

can warrant sanctions include the spoliation of evidence. *See id*. at 745-46. "Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Crain v. City of Selma*, 952 F.3d 634, 639 (5th Cir. 2020) (quotation omitted). "[F]ederal law applies to the imposition of sanctions for the spoliation of evidence." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (collecting cases).

"For an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016). The party seeking the sanction bears the burden of showing the requisite intent and prejudice. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005)

"Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (internal quotation marks omitted). The critical inquiry for spoliation sanctions is the intent to suppress the truth and not a party's knowledge of "the prospect of litigation." *Id*. "Where the destruction occurs prior to the commencement of litigation, the court must make an explicit finding of bad faith before imposing an adverse inference instruction." *Grummer v. Budget Truck Rental, LLC*, No. 5:22-CV-5177, 2024 WL 926963, at *14 (W.D. Ark. Mar. 4, 2024) (citing *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 461-62 (8th Cir. 2013)).

Plaintiffs bear the burden of showing that they were prejudiced by Defendant Steady Source's destruction of evidence. *See Lincoln Composites, Inc.*, 825 F.3d at 463. Prejudice requires finding that the evidence is both relevant and not available to the party through any other means. *See Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004); *see also Wade*, 485 F.3d at 1035 (determining that there was no prejudice from not preserving the evidence because there was other

5

relevant evidence available to the party on the issue). The Court will now review the record and determine if sanctions are appropriate in the instant case.

Plaintiffs contend that Defendant Steady Source intentionally allowed the damaged rear underride guard to be thrown away and allowed the trailer to be repaired, thereby constituting spoliation of evidence that prejudiced Plaintiffs' ability to make a case against Defendant Steady Source. (ECF No. 120, at 1-2). Plaintiffs argue that Defendant Steady Source should have been aware that the evidence needed to be preserved because of the seriousness of the accident and a letter of preservation sent on April 17, 2020. (ECF No. 120, at 3, 7). Plaintiffs also argue that Defendant Steady Source should have preserved the trailer because it had purchased another trailer in the past that had an instruction manual that noted the importance of preserving the evidence. (ECF No. 120, at 4). Plaintiffs note that the trailer was sold at auction on April 27, 2020. (ECF No. 120, at 4). Overall, Plaintiffs strongly emphasize that evidence exists to support claims that Defendant Steady Source was responsible for the spoliation of evidence. (ECF No. 120, at 4, 8).

Defendant Steady Source contends that following the crash it never regained possession of the trailer. (ECF No. 114, at 7). Defendant Steady Source argues that directly after the crash the driver followed the instructions from the police officers on scene to leave it in a nearby parking lot. (ECF No. 114, at 7). Defendant Steady Source argues that after the crash it never regained control over the trailer, and that the trailer was deemed to be a total loss. (ECF No. 114, at 7). Defendant Steady Source then notes that the liability insurance company for the Transit wrote a check to Defendant Steady Source. (ECF No. 114, at 7). Defendant Steady Source contests Plaintiffs' allegation that it repaired the trailer following the crash and argues that by the time the letter of preservation was received on April 17, 2020, full value for the trailer had already been paid for the trailer by Plaintiffs' insurance company as far back as November 27, 2019. (ECF No. 114, at 7-8).

The Court finds that Plaintiffs fail to show any inference that Defendant Steady Source intentionally spoliated the evidence related to the trailer. In the Court's evaluation of the record, the

Court can find no evidence, circumstantial or otherwise, that Defendant Steady Source acted intentionally and destroyed evidence in a manner indicating a desire to suppress the truth. Plaintiffs' arguments for this element seem to almost entirely rest on the belief that Defendant should have anticipated the prospect of litigation or had a duty to preserve in anticipation of litigation. However, as the Court noted above, Defendant Steady Source's intentional destruction of the evidence with an intent to suppress the truth, *not its mere knowledge of the possibility of litigation*, is the key inquiry for Plaintiffs' requested spoliation sanction. *See Wade*, 485 F.3d at 1035 (emphasis added).

Nothing on the record suggests that Defendant Steady Source disposed of the trailer with a desire to suppress the truth. Defendant Steady Source followed the directions of police officers by moving the trailer and rear underride guard to a nearby parking lot following the crash on November 14, 2019. Further, Plaintiffs fail to provide evidence disputing that on November 27, 2019, or just thirteen (13) days after the crash, Plaintiffs' insurance company paid Defendant Steady Source full value for the trailer after the trailer was deemed a total loss.[2] Plaintiffs emphasize that that they sent a letter of preservation to Defendant Steady Source on April 17, 2020, and that the trailer was then sold at auction on April 27, 2020. Again, however, Plaintiffs offer no evidence to show that Defendant Steady Source was even in possession of the trailer one hundred and fifty-five (155) days later when Plaintiffs sent the preservation letter. While Defendant Steady Source may have had some idea that litigation may be incoming, this alone is simply not enough to justify the required finding of bad faith.

Plaintiffs bear the burden of showing that Defendant Steady Source acted with intentionality, and Plaintiffs cannot meet this burden. Thus, the Court finds that Plaintiffs' requested adverse inference instruction is inappropriate because the record does not support the conclusion that

---

[2] Notably, the owner of Defendant Steady Source stated that the insurance company for the Transit told him "[t]he trailer [had been] pronounced salvage. Don't worry about that trailer no more. That's not your trailer. Here's the check to your lender and here's the check to you. End of story." (ECF No. 114-3, at 4). When the owner asked where the trailer was so that he could retrieve some equipment, the Transit's insurance company told him that they could not tell him where the trailer was because it was not his trailer anymore. (ECF No. 114-3, at 4).

Defendant Steady Source acted in bad faith. *See Rattray v. Woodbury Cnty., Iowa,* 761 F. Supp. 2d 836, 845 (N.D. Iowa 2010) ("The Eighth Circuit Court of Appeals has made it clear that a sanction for destruction of evidence, such as an adverse inference instruction, requires a finding of intentional destruction indicating a desire to suppress the truth, i.e., bad faith") (citing *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006)). Assuming, without deciding, that Plaintiffs were prejudiced by repair of the trailer, Plaintiffs request for a spoliation sanction that requires an element of bad faith is denied because the Court has determined that Defendant Steady Source did not act with bad faith.[3]

### B. Negligence

The Court now turns to Plaintiffs' remaining claim of negligence against Defendant Steady Source. Negligence "is the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do." *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, 4, 369 S.W.3d 717, 719 (2010). The essential elements of a negligence claim are: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries. *See Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411, 416 (2004). The burden is always on the plaintiff; negligence is never assumed. *See Yanmar Co. v. Slater*, 2012 Ark. 36, 16, 386 S.W.3d 439, 449 (2012).

Negligence may be established by direct or circumstantial evidence, but a plaintiff may not rely on inferences based on conjecture or speculation. *See Ark. Kraft, a Div. of Green Bay Pkg. v. Cottrell*, 313 Ark. 465, 471, 855 S.W.2d 333, 337 (1993). Sufficient evidence is not present if a factfinder is merely given a choice of possibilities that requires the factfinder to guess as to a cause. *Id*. "The mere fact of an accident does not give rise to an inference of negligence." *Yanmar Co.*, 2012 Ark. at 16, 386 S.W.3d at 449.

---

[3] The Court notes that this includes Plaintiffs' singular unsupported paragraph discussing Defendant Steady Source's alleged spoliation of electronic data contained within the tractor. (ECF No. 120, at 5).

Defendant Steady Source contends that summary judgment is appropriate because Plaintiffs' negligence claim is based on products liability, and Plaintiffs cannot establish that Defendant Steady Source is a retailer or manufacturer as required by products liability law. (ECF No. 105, at 6).

In response, Plaintiffs contend that they have a well-founded negligence claim, and that it "pertains to [Defendant] Steady Source's direct action (or inactions) concerning vehicle maintenance, which is distinct from product liability claims that typically focus on manufacturing or design defects." (ECF No. 120, at 1). Plaintiffs state that "this response focuses on the ordinary negligence of [Defendant] Steady Source . . . ." (ECF No. 120, at 1). Plaintiffs argue that even though the driver of the tractor-trailer states that he inspected the lights of the trailer and found them to be working properly and that he used his turn signal while waiting to make his left turn, Plaintiff Doyle states that he did not see any turn signal before he struck the rear of the trailer. (ECF No. 120, at 2-3). In short, Plaintiffs contend that whether there were working brake lights and turn signals presents an unresolved material question of fact. (ECF No. 120, at 3).

In its reply, Defendant Steady Source continues its argument that Plaintiffs' negligence claim is rooted in a theory of products liability. (ECF No. 114, at 3). Defendant Steady Source notes that the driver of the tractor-trailer performed a pre-trip inspection on the day of the accident that included making sure the trailer's lights were working. (ECF No. 114, at 3). Defendant Steady Source argues that Plaintiffs fail to offer evidence refuting that the driver preformed a proper pre-trip inspection of the tractor-trailer. (ECF No. 114, at 3). Defendant Steady Source asserts that Plaintiffs have failed to properly plead ordinary negligence. (ECF No. 114, at 4). Defendant Steady Source also argues that the driver took all reasonable steps possible to exercise ordinary care. (ECF No. 114, at 4). Defendant Steady Source then emphasizes again that Plaintiffs did not provide any evidence to refute the fact that the driver performed a pre-trip inspection. (ECF No. 114, at 5).

Plaintiffs' negligence claim can be split into two categories: (1) negligence from Defendant Steady Source's alleged failure to inspect and maintain the truck; and (2) failure to act reasonably

9

under all circumstances, i.e. ordinary negligence. *See Jernigan v. Cash*, 298 Ark. 347, 349, 767 S.W.2d 517, 519 (Ark. 1989) ("The test for negligence is whether the defendant, in light of all circumstances, acted as a person of ordinary prudence would have acted under the same or similar circumstances.").

The first category of Plaintiffs' negligence claim can be swiftly disposed of because Plaintiffs fail to present any evidence contesting the fact that the driver of the tractor-trailer conducted a pre-trip inspection of the semi-trailer. (ECF No. 114-1, at 5). The driver's inspection included checking the entirety of the truck, all the sensors in the cabin of the truck, the tires, mirrors, windows, headlights, stop signals, and turns signals. (ECF No. 114-1, at 5). Additionally, the driver specifically states that he checked the brake lights and turn signals on his tractor-trailer before he began his trip that morning and that the lights were in working condition. (ECF No. 114-1, at 5). These uncontested facts show that the tractor-trailer was inspected and that it was in working condition at the time the driver began his trip. Thus, Plaintiffs fail to present any evidence that would allow a reasonable jury to conclude that Defendant Steady Source was negligent in failing to inspect and maintain the truck.

The second category of Plaintiffs' negligence claim presents a more substantial issue. As noted above, there is no genuine dispute of material fact as to whether the driver inspected the tractor-trailer before leaving and that the turn signals were in working condition at that time. However, while the driver states that he activated his left turn signal, Plaintiff Doyle states that he did not see any "indication that [the tractor-trailer] was stopped or turning or anything like that" before he ran into the back of the trailer. (ECF No. 108-3, at 7). This presents a genuine dispute of material fact as to whether the driver activated his turn signal.

Defendant Steady Source attempts to contest Plaintiff Doyle's deposition by pointing out that Plaintiff Doyle: (1) could not recall the color of the trailer; (2) did not remember giving a verbal statement to the police; and (3) made the verbal statement that he felt like he was falling asleep while

10

driving and sending a voice text to a friend. (ECF No. 114, at 5). In essence, Defendant Steady Source argues that Plaintiff Doyle was not paying attention while driving and that Plaintiff Doyle's testimony should be discounted because of this. However, at the summary judgment stage, it is not the district court's function to weigh the evidence and determine the truth but to simply determine if there is a genuine issue for trial. *See Anderson*, 477 U.S. at 242-43.

Here, there is a genuine issue for trial because failure to activate a turn signal would be inconsistent with exercising ordinary care. Whether the turn signal was active on the tractor-trailer when Plaintiff Doyle was approaching is a question for a jury to determine. Thus, the Court finds that there is a genuine dispute of material fact as to whether Defendant Steady Source is liable for ordinary negligence.

## IV.  CONCLUSION

Accordingly, the Court finds that Defendant Steady Source's Motion for Summary Judgment (ECF No. 103) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims of strict liability, breach of implied warranty, and failure to warn against Defendant Steady Source are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' negligence claim against Defendant Steady Source, as it relates to failure to inspect and maintain the tractor-trailer, is **DISMISSED WITH PREJUDICE**. Plaintiffs' negligence claim against Defendant Steady Source, as it relates to ordinary negligence for the alleged failure to activate a turn signal, shall remain for trial. Plaintiffs' request for spoliation sanctions and an adverse inference instruction is **DENIED**.

**IT IS SO ORDERED**, this 3rd day of September, 2025.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge