IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DOYLE WESLEY HUGHES and
HOLLY HUGHES                                                                                    PLAINTIFFS

v.                                              Case No. 1:22-cv-01020

REITNOUER, INC.;
REITNOUER ENTERPRISES, INC;
and STEADY SOURCE CO.
d/b/a STEADY LANES                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Partial Summary Judgment on Punitive Damages filed by Separate Defendant Reitnouer, Inc. ("Separate Defendant"). (ECF No. 127). Plaintiffs Doyle Wesley Hughes ("Plaintiff Doyle") and Holly Hughes ("Plaintiff Holly") (together, "Plaintiffs") have responded. (ECF No. 148). Separate Defendant replied. (ECF No. 153). The Court finds the matter ripe for consideration.

**I.   BACKGROUND**

This is a products liability and negligence case that arises from an accident that occurred on November 14, 2019. Plaintiff Doyle was driving a 2017 Ford Transit van ("the Transit") on the highway when he drove into the rear of a tractor-trailer owned by Defendant Steady Source Co. d/b/a Steady Lanes ("Defendant Steady Source"), which caused the Transit to partially go under the rear of the trailer and catch on fire. The trailer was built by Separate Defendant.

The details are as follows. On November 14, 2019, Plaintiff Doyle was driving the Transit when he rear-ended a tractor-trailer owned by Defendant Steady Source. (ECF No. 128, at 1). The trailer was manufactured by Separate Defendant and was equipped with a rear under-

ride guard. (ECF No. 128, at 1). Plaintiff Doyle was traveling at 52 miles per hour at the time of collision, but at the moment of impact the Transit had a recorded Delta-V of 35.3 miles per hour.[1] (ECF No. 150, at 1-2). The Transit weighed 8,100 pounds. (ECF No. 128, at 1). Upon impact, the Transit under-rode the rear of the trailer. (ECF No. 128, at 1).

Separate Defendant had no prior knowledge of incidents involving its rear under-ride guard. (ECF No. 128, at 2). Separate Defendant had never been informed that the rear under-ride guard was defective outside the allegations of the instant lawsuit. (ECF No. 128, at 2). Testing data for whether Separate Defendant's rear under-ride guard complied with the US and Canadian standards for under-ride guards was lost during a hacking incident. (ECF No. 150, at 2). New tests were performed on Separate Defendant's rear under-ride guards that showed its design complied with the Canadian standard for rear under-ride guards. (ECF No. 150, at 2). However, these new tests were performed after Plaintiffs requested the test data for Separate Defendant's rear under-ride guards. (ECF No. 150, at 2).

On November 12, 2020, Plaintiffs filed this action in Columbia County Arkansas Circuit Court, and on January 31, 2022, Plaintiffs filed an Amended Complaint in state court. On March 28, 2022, a now dismissed defendant, Ford Motor Company, removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 2). Plaintiffs' lawsuit brings claims of strict liability, breach of implied warranties, failure to warn, and negligence against Separate Defendant. Plaintiffs request compensatory and punitive damages from Separate Defendant. (ECF No. 6, at 14-21).

On December 3, 2024, Separate Defendant filed the instant motion moving to prevent Plaintiffs from recovering punitive damages. (ECF No. 127). In sum, Separate Defendant

---

[1]The Court notes that Delta-V is the change in velocity during a vehicle crash. (ECF No. 140-2, at 26). It is calculated by taking the beginning speed and subtracting the ending speed. (ECF No. 140-2, at 27).

contends that it had no knowledge of any other similar accidents with the trailer's rear under-ride guard and that it had not been made aware of any defects in its rear under-ride guards. (ECF No. 127, at 1).

In response, Plaintiffs assert that evidence exists showing that Separate Defendant knew or should have known that its rear under-ride guards were defective and posed an unreasonable danger to vehicles on the road. (ECF No. 148, at 1). Plaintiffs point to Separate Defendant's failure to retain testing data, adherence to the minimum safety standards for rear under-ride guards, and failure to track the performance of its rear under-ride guards in the field. (ECF No. 149).

## II.  STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir.

2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving part's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

### III.  DISCUSSION

The Court faces one issue in the instant motion, whether Plaintiffs can seek punitive damages from Separate Defendant. Because the Court's jurisdiction is based on diversity of citizenship between the parties, the Court must decide whether to apply federal or state law. Under *Erie v. Tompkins*, a federal court sitting in diversity must apply state substantive law and federal procedure law. 304 U.S. 64, 78, 58 S. Ct. 817, 82 L.Ed. 1188 (1938); *see also Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) ("Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship."). No party disputes that Arkansas law applies to Plaintiffs' punitive damage claim.

"Punitive damages are to be a penalty for conduct that is malicious or done with the deliberate intent to injure another." *Edwards v. Stills*, 335 Ark. 470, 483, 984 S.W.2d 366, 373 (1998). Punitive damages are governed in Arkansas as follows:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:

4

> (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred.
>
> (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. A plaintiff must prove this by clear and convincing evidence. Ark. Code Ann. § 16-55-207. The standard for punitive damages is high because negligence, or even gross negligence, is insufficient to support a claim for punitive damages. *Nat'l By-Prod., Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 494, 731 S.W.2d 194, 196 (1987).

Punitive damages may be imposed when the defendant acts with malice. *Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 185, 485 S.W.2d 192, 195 (1972). Malice is not necessarily personal hate but, rather, is defined as "an intent and disposition to do a wrongful act greatly injurious to another." *Id.* Punitive damages may also be imposed if the defendant acted with such willfulness, wantonness, or conscious indifference to consequences that malice can be inferred. *Wallace v. Dustin*, 284 Ark. 318, 320, 681 S.W.2d 375, 377 (1984). Willful and wanton conduct is "an actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." Arkansas Model Jury Instructions – Civil, AMI 1101 (2024 ed.). Malice may also be inferred when "the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences." *Freeman v. Anderson*, 279 Ark. 282, 286-87, 651 S.W.2d 450, 452 (1983). Summary judgment on punitive damages is appropriate "if the evidence [is] such that no reasonable jury could [find] grounds for awarding punitive damages." *In re Aircraft Accident at Little Rock*, 351 F.3d 874, 876 (8th Cir. 2003) (applying Arkansas law).

In support for its motion, Separate Defendant contends that no evidence exists showing

that Separate Defendant had any knowledge of prior incidents involving its rear under-ride guards. (ECF No. 129, at 5). Separate Defendant argues that its rear under-ride guards complied with both US and Canadian standards for rear under-ride guards and notes that Canadian standards are stricter than US standards. (ECF No. 129, at 6). Separate Defendant asserts that Plaintiffs have failed to identify any specific defect in the rear under-ride guards other than stating that a defect exists. (ECF No. 129, at 6). Finally, Separate Defendant also argues that there is no evidence on the record that would suggest Separate Defendant acted maliciously or with reckless disregard for the consequences of its actions allowing malice to be inferred. (ECF No. 129, at 6).

In response, Plaintiffs blanketly contend that it is inevitable that any model trailer placed in active use would end up in a rear-end collision with a vehicle and under-riding would be possible without an effective rear under-ride guard. (ECF No. 149, at 2). Plaintiffs assert that whether Separate Defendant complied with the relevant safety standards does not prove or disprove any disputed issued regarding whether the trailer was properly built. (ECF No. 149, at 3). Plaintiffs also argue that Separate Defendant failed to retain the trailer's testing data and documentation that would show Separate Defendant's rear under-ride guards meet the federal standards.[2] (ECF No. 149, at 3). Further, Plaintiffs argue that Separate Defendant has only ever complied with the "absolute minimum standards" for rear under-ride guards and never attempted to exceed the US and Canadian standards. (ECF No. 149, at 4). Plaintiffs contend that Separate Defendant's lack of prior knowledge related to accidents involving its trailers is a result of Separate Defendant's willful blindness and failure to investigate the performance of its trailers,

---

[2]The Court notes that it is undisputed that Separate Defendant appears to have lost this testing data and documentation because of a hacking incident that resulted in only eighty percent or eighty-five percent of Separate Defendant' information being recovered. (ECF No. 148-1, at 36; ECF No. 153, at 2; ECF No. 149, at 3). This absence of testing data was discovered during discovery for this case. (ECF No. 148-1, at 38; ECF No. 149, at 3).

rather than the result of a superior design. (ECF No. 149, at 5).

In reply, Separate Defendant states that it had no prior knowledge of any injuries related to its rear under-ride guards or that its rear under-ride guards were dangerous. (ECF No. 153, at 1). Separate Defendant argues that Plaintiffs have presented no evidence that would contradict this testimony. (ECF No. 153, at 1). Separate Defendant also argues that the fact rear-end accidents are inevitable is not evidence of malice, that losing testing data in a computer hack incident is not evidence of malice, and that the lack of records on other potential incidents is not evidence of malice. (ECF No. 153, at 2).

The Court is unpersuaded that the evidence against Separate Defendant is such that a reasonable jury could find grounds for awarding punitive damages. Plaintiffs consistently argue that Separate Defendant knew or should have known its rear under-ride guards were dangerous but Plaintiffs never show evidence of why Separate Defendant knew or should have known its rear under-ride guards were dangerous. Plaintiffs are correct that Separate Defendant's compliance with the US and Canadian standards for rear under-ride guards does not tend to prove or disprove whether the trailer and rear under-ride guard were safe but neither does it show malice on the part of Separate Defendant. Additionally, Plaintiffs do not show that Separate Defendant's trailer or rear under-ride guard failed to meet the US and Canadian standards or were even below the standards.

Plaintiffs harp on Separate Defendant's loss of its 2016 trailer testing data, but, again, the Court fails to see how the hacking of Separate Defendant's data by an unknown third-party is malicious behavior on the part of Separate Defendant. There may be some wisdom in keeping backups of such data, but failure to anticipate being hacked is not evidence of malice. Further, Plaintiffs provide no evidence that the data was otherwise hidden or disposed of for nefarious

reasons. The Court is equally unpersuaded by Separate Defendant's failure to track field data. At most, Separate Defendant's lack of field data demonstrates nothing more than mere negligence, and mere negligence is not enough to suggest "willful and wanton" conduct.

## IV.  CONCLUSION

Accordingly, the Court finds that Separate Defendant's Motion for Partial Summary Judgment on Punitive Damages (ECF No. 127) should be and hereby is **GRANTED**.

**IT IS SO ORDERED**, this 5th day of September, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge