IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DOYLE WESLEY HUGHES and
HOLLY HUGHES                                                                                              PLAINTIFFS

v.                                                Case No. 1:22-cv-01020

REITNOUER, INC.;
REITNOUER ENTERPRISES, INC;
and STEADY SOURCE CO.
d/b/a STEADY LANES                                                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Reitnouer Enterprises, Inc ("Defendant Enterprises").  (ECF No. 133).  Plaintiffs Doyle Wesley Hughes ("Plaintiff Doyle") and Holly Hughes ("Plaintiff Holly") (together, "Plaintiffs") have responded. (ECF No. 145).  Defendant Enterprises has replied.  (ECF No. 151).  The Court finds the matter ripe for consideration.

## I.   BACKGROUND

This is a products liability and negligence case that arises from an accident that occurred on November 14, 2019.  Plaintiff Doyle was driving a 2017 Ford Transit van ("the Transit") on the highway when he drove into the rear of a tractor-trailer owned by Defendant Steady Source Co. d/b/a Steady Lanes ("Defendant Steady Source"), which caused the Transit to partially go under the rear of the trailer and catch on fire.  The trailer was built by Separate Defendant Reitnouer, Inc. ("Separate Defendant").

The details are as follows.  On November 14, 2019, Plaintiff Doyle was traveling northbound on the highway when he rear-ended a tractor-trailer being operated by Defendant

Steady Source as the tractor-trailer attempted to make a left turn.  (ECF No. 135, at 1; ECF No. 147, at 2).  The trailer was manufactured and produced by Separate Defendant.  (ECF No. 135, at 2).  Following the collision, the Transit caught on fire and allegedly injured Plaintiff Doyle.  (ECF No. 135, at 2).

Defendant Enterprises is a subsidiary of Separate Defendant.  (ECF No. 135, at 2). Defendant Enterprises performs its fabrication services at a separate facility from Separate Defendant and splits its production fifty percent (50%) between Separate Defendant and fifty percent (50%) with other entities.  (ECF No. 135, at 2).  Defendant Enterprises fabricated the rear underride guards and certain other components that would be included in the trailers manufactured by Separate Defendant.[1]  (ECF No. 135, at 2).  Defendant Enterprises invoiced Separate Defendant for the components that it fabricated and Separate Defendant would then pay Defendant Enterprises for this production.[2]  (ECF No. 135, at 2).  After fabrication, Defendant Enterprises would deliver the components to Separate Defendant's facility where Separate Defendant installed and assembled the components onto its trailers.  (ECF No. 135, at 2-3). Defendant Enterprises played no role in installing the components or choosing the bolts that were used in the installation of the components to the trailer.  (ECF No. 135, at 3).

Plaintiffs' expert witness, Perry Ponder ("Mr. Ponder"), has opined that the rear underride guard broke off the trailer involved in the collision because the bolts that held the rear underride guard sheared off upon impact.  (ECF No. 135, at 3).  Mr. Ponder has also opined that he has identified three separate design defects that, if fixed, would have prevented Plaintiff Doyle's under-ride of the trailer, and several alternate designs for the rear underride guard.  (ECF No.

---

[1] More specifically, Defendant Enterprises fabricates the gussets and the bumper of the rear underride guard, and, separately, the light panels for the trailer.  (ECF No. 133-1, at 8).  The Court notes for reference that a diagram depicting the gusset can be found at docket entry 157-2.  (ECF No. 157-2).
[2] The Court notes that Plaintiffs have denied this sentence in part, stating, "[n]o physical evidence about payment status."  (ECF No. 147, at 3).

2

147, at 4).

On November 12, 2020, Plaintiffs filed this action in Columbia County, Arkansas Circuit Court, and on January 31, 2022, Plaintiffs filed an Amended Complaint in state court. On March 28, 2022, a now dismissed defendant, Ford Motor Company, removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 2). Plaintiffs' lawsuit brings claims of strict liability, breach of implied warranties, failure to warn, and negligence against Defendant Enterprises. (ECF No. 6, at 14-21). Plaintiffs request compensatory and punitive damages from Defendant Enterprises. (ECF No. 6, at 14-21).

On December 3, 2024, Separate Defendant filed a Motion to strike Mr. Ponder's affidavit and a Motion to disqualify Mr. Ponder from trial. (ECF Nos. 125, 145). On September 22, 2025, the Court denied both motions. (ECF No. 205). On December 3, 2024, Separate Defendant also filed a Motion for Summary Judgment, arguing that Plaintiffs failed to provide evidence that the trailer underride guard was defectively designed. (ECF Nos. 130). On September 29, 2025, the Court denied Separate Defendant's motion. (ECF No. 206).

On December 3, 2024, Defendant Enterprises filed the instant motion requesting that summary judgment be granted in its favor. (ECF No. 133). In essence, Defendant Enterprises asserts that Plaintiffs lack any evidence showing that Defendant Enterprises was negligent or breached a legal duty to Plaintiffs. (ECF No. 133, at 1). Defendant Enterprises argues that Plaintiffs cannot point to any purported fabrication defect in the components that Defendant Enterprises sent to Separate Defendant for assembly. (ECF No. 133, at 2). Further, Defendant Enterprises argues that it is a legally distinct entity and cannot be held liable for negligence on the part of Separate Defendant. (ECF No. 133, at 2).

In response, Plaintiffs contend that Defendant Enterprises was knowingly manufacturing

3

and supplying components for Separate Defendant in a defective condition. (ECF No. 145, at 1). Plaintiffs argue that Defendant Enterprises is liable because of its knowledge of the intended use of the components that it produced and, subsequently, the actual use of the components by Separate Defendant. (ECF No. 145, at 2). Additionally, Plaintiffs assert that Defendant Enterprises has created liability for itself because it supplied a defective component to Separate Defendant that was part of the finished trailer, rendering the trailer unreasonably dangerous. (ECF No. 145, at 1-2).

## II. STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92

F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving part's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

### III.   DISCUSSION

The Court faces several issues in the instant motion: (1) whether Defendant Enterprises can be held liable for products liability; (2) whether Defendant Enterprises can be held liable for negligence; and (3) whether Plaintiff can recover punitive damages from Defendant Enterprises. The Court will address each question in turn.

Before the Court can reach the merits of any potential products liability claim, the Court must first consider whether Defendant Enterprises, Reitnouer Enterprises, Inc., is a separate legal entity from Separate Defendant, Reitnouer, Inc.

Defendant Enterprises is a subsidiary of Separate Defendant. (ECF No. 133-1, at 6). In Plaintiffs' Amended Complaint, Plaintiffs largely conflate the two corporations and combine the allegations against Separate Defendant with those against Defendant Enterprises. (ECF No. 6, at 2-8). However, the Arkansas Supreme Court has held that all corporations, "regardless of the fact that the holders of stock and the officers of the corporation are identical, are separate and distinct legal entities; and it follows that, in the absence of facts on which liability can be predicated, one such corporation is not liable for the debts of another." *K.C. Props. of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 32, 280 S.W.3d 1, 16 (2008) (citation

omitted). "The fact that the officers of one corporation are also officers of another does not make the corporations the same, nor the acts of one the acts of the other." *Id*. at 33, 16. (citation omitted). "The fact that some of the stockholders in one company were also general managers and officers of another company, did not make these companies the same corporation, nor the acts of one the acts of the other." *Id*. (citation omitted). To clarify, the Court notes that Defendant Enterprises is not liable for any conduct alleged against Separate Defendant, and Defendant Enterprises can only be held liable for its own conduct in this situation. Though, the Court also notes that Plaintiffs appear to recognize this in their response and now argue that Defendant Enterprises is liable for separate reasons.

### A. Products Liability

Having established that Defendant Enterprises can only be held liable for its own conduct, the Court now turns to Plaintiffs' products liability claim against Defendant Enterprises.

Arkansas broadly defines "products liability action" as including "all actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product." Ark. Code Ann. § 16-116-202(5). Thus, a plaintiff can assert multiple theories of liability in a products liability claim. *See Nationwide Rentals Co., Inc. v. Carter*, 298 Ark. 97, 101, 765 S.W.2d 931, 933 (1989).

In 1973, Arkansas adopted the strict liability theory of recovery for products liability cases. *Forrest City Mach. Works, Inc. v. Aderhold*, 273 Ark. 33, 39, 616 S.W.2d 720, 724 (1981). To recover under that theory, a plaintiff must prove: (1) that the defendant was engaged in the business of manufacturing, assembling, selling, or leasing, or otherwise distributing the product; (2) that the product supplied by the defendant was in a defective condition that rendered it

6

unreasonably dangerous; (3) that the plaintiff sustained damages; and (4) that the defective condition was a proximate cause of the plaintiff's damages. *See S. Co. v. Graham*, 271 Ark. 223, 225, 607 S.W.2d 677, 679 (1980) (citing Ark. Model Jury Instr., Civil AMI 1008). Proof that a product was "unreasonably dangerous" requires "something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product." *Pilcher v. Suttle Equip. Co.*, 365 Ark. 1, 7, 223 S.W.3d 789, 794 (2006). A "defective condition" renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-202(2). "Strict liability eliminates the need to show both privity and negligence. But a plaintiff still must prove injury and that it was caused by the product." *Mixon v. Chrysler Corp.*, 281 Ark. 202, 205, 663 S.W.2d 713, 714 (1984). To do so, there must be proof the product was defective when it left the seller's hands. *See Higgins v. Gen. Motors Corp.*, 250 Ark. 551, at 555, 465 S.W.2d 898, 900 (1971). Generally, "there are three varieties of product defects: manufacturing defects, design defects, and inadequate warnings." *West v. Searle & Co.*, 305 Ark. 33, 37, 806 S.W.2d 608, 610 (1991). The parties only address manufacturing defects and design defects in the instant motion.

"Manufacturing defects involve a configuration of a product that deviates from the intended design." *Simpson v. Wright Med. Grp., Inc.*, No. 5:17-cv-0062-KGB, 2018 WL 1570795, at *9 (E.D. Ark. Mar. 30, 2018). A design defect claim involves "a design that is executed according to plan but produces unintended and unwanted results." *Id.* To prevail on a manufacturing or design defect claim, the plaintiff must show that a manufacturing flaw or defect in the product's design was the proximate cause of injuries, and that the product was in a defective condition when it left the defendant's hands. *See Higgins*, 250 Ark. at 555, 465 S.W.2d

at 900.

Absent direct proof of a manufacturing or design defect, it is sufficient if the plaintiff offers substantial evidence that "negates other possible causes of failure of the product not attributable to the defendant, thus raising a reasonable inference that a defective condition existed while the product was still in the defendant's control." *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, at 6, 481 S.W.3d 455, 450 (2016). "Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond suspicion and conjecture." *Id*. (citing *Higgins*, 287 Ark. at 392, 699 S.W.2d at 743). Further, "such proof may be [shown] by circumstantial evidence." *B. Braun Med., Inc. v. Sexton*, 2025 Ark. App. 55, at 17, 705 S.W.3d 510, 520 (2025). "'[W]hen common experience teaches that an accident would not have happened in the absence of a defect, a case may sometimes be allowed to proceed to a factfinder provided that the plaintiff can produce evidence that tends to negate other causes of the observed failure." *Am. Nat'l Prop. & Cas. Co. v. Broan-Nutone, LLC*, No. 5:18-CV-5250, 2020 WL 3578024, at *2 (W.D. Ark. July 1, 2020) (quoting *Crawford v. Sears Roebuck & Co.*, 295 F.3d 884, 886 (8th Cir. 2002)).

Initially, Defendant Enterprises does not directly address the products liability claim and, instead, states that its arguments and undisputed facts against negligence apply to Plaintiffs' products liability claim. (ECF No. 134, at 14). Defendant Enterprises contends that analysis of the collision indicates that the bolts holding the rear underride guard were missing and sheared off at the guard's connection to the trailer frame. (ECF No. 134, at 12). Defendant Enterprises argues that it had no influence over the bolts that were used to hold the guard to the trailer. (ECF No. 134, at 11). Additionally, Defendant Enterprises asserts that neither Plaintiffs nor Plaintiffs' retained expert witness offer any evidence showing that the components fabricated by Defendant

8

Enterprises contained defects other than conclusory and unsupported arguments that the guard was "inherently defective and unreasonably dangerous." (ECF No. 134, at 12). Defendant Enterprises then emphasizes that it fabricated components pursuant to the design specifications provided by Separate Defendant. (ECF No. 134, at 12). Defendant Enterprises also argues that Plaintiffs' expert testified—though not to a reasonable degree of engineering certainty—that Plaintiff Doyle would likely not have under-rode the trailer if the bolts had not sheared. (ECF No. 134, at 15-16).

In response, Plaintiffs contend that Defendant Enterprises should be liable for manufacturing a critical component of the trailer that was sold in a defective condition. (ECF No. 146, at 3). Plaintiffs broadly argue that Defendant Enterprises knowingly fabricated components according to a design that was foreseeably dangerous because of the material choices and thickness of the material. (ECF No. 146, at 5). Plaintiffs then quote the Restatement Second of Torts §404 and argue that a fabricator cannot blindly follow specifications that are "so obviously bad that a competent contractor would realize there was a grave chance the product would be dangerously unsafe." (ECF No. 146, at 4). Plaintiffs maintain that the thickness of the gusset and the material choices contributed directly to the bolts shearing off during the collision. (ECF No. 146, at 5). Plaintiffs end by arguing that the evidence demonstrates that the subject rear underride guard was defective and inherently dangerous to the extent that it was inevitable that "sooner or later an injury and/or death was bound to happen, and the underride guard was bound to fail." (ECF No. 146, at 6).

In reply, Defendant Enterprises emphasizes that it can only be liable if it supplied a defective product and that Plaintiffs have failed to present any such evidence beyond conclusory arguments. (ECF No. 151, at 2). Further, Defendant Enterprises argues that Plaintiffs fail to

present any expert testimony or any other form of proof that suggests that the gusset or material thickness was obviously dangerous to a fabricator. (ECF No. 151, at 3). Defendant Enterprises also argues foreseeability of harm simply because an accident might occur "sooner or later" has no basis in Arkansas law. (ECF No. 151, at 5).

The Court can find no genuine dispute of material fact that would prevent summary judgment on Plaintiffs' products liability claim. As an initial matter, Plaintiffs provide no proof, and do not even assert, that any of the products fabricated by Defendant Enterprises deviated from the intended designs provided by Separate Defendant. *See Simpson*, 2018 WL 1570795, at *9 (defining manufacturing defect as "a configuration of a product that deviates from the intended design"). Thus, the Court finds that Plaintiffs' manufacturing defect claim must fail.

As to Plaintiffs' design defect claim, it is undisputed that Separate Defendant, not Defendant Enterprises, is the designer of the trailer, including the underride guard. (ECF No. 147, at 3). Most of Plaintiffs' argument hinges on the contention that Defendant Enterprises blindly followed the design specifications provided by Separate Defendant, which resulted in a defective and dangerous product.

Plaintiffs' expert identified three defects in the design of the trailer underride: (1) the use of 1/2-inch bolts, (2) too-narrow gusset design, and (3) the use of a two-post rather than four-post design. (ECF No. 145-3, at 17). Plaintiffs also contend that the gusset's thickness and material contributed to the shearing of the bolts during the collision. (ECF No. 146, at 5). Defendant Enterprises contends that it did not design the underride guard's gusset, design the trailer structure, or install the underride guard using the 1/2-inch bolts. (ECF No. 134, at 11). Instead, Defendant Enterprises argues that it only manufactured the gussets and bumper of the underride guard according to the specifications provided by Separate Defendant and delivered the underride

guard to Separate Defendant who attached it to the main beam of the trailer. (ECF No. 134, 10-11). Defendant Enterprises also contends that the components of the underride guard that it manufactured and provided were themselves not defective.

The issue for the Court is whether Defendant Enterprises can be liable for the alleged defect in the underride guard design when it took no part in designing the underride guard. The Supreme Court of Arkansas used the "component-parts doctrine" to address this issue in *Wagner v. General Motors Corporation*.[3]  370 Ark. 268, 270, 258 S.W.3d 749, 752 (2007). The component-parts doctrine provides that "suppliers of inherently safe component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component-part supplier did not design or build." *Id.* at 275-77, 755-56 (quoting *In re TMJ Implants Prods. Liab. Litig. v. E.I. DuPont de Nemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996)).

In *Wagner*, defendant Pilkington manufactured glass windows that shattered in a car accident when the driver was thrown into the driver's side window. *Id.* at 269, 751. The plaintiff argued that Pilkington negligently designed and manufactured the glass used in the car windows. *Id.* Pilkington argued on motion for summary judgment that it had no design responsibilities for the glass, it manufactured the glass according to design specifications from General Motors, and the glass was free from manufacturing defects. *Id.* at 270, 752. The Arkansas Supreme Court held that questions of material fact remained, precluding it from granting summary judgment for Pilkington. *Id.* at 277, 756. Specifically, questions existed as to whether there was a defect in the

---

[3] Plaintiffs assert that the component-parts doctrine has not yet been adopted by Arkansas courts. (ECF No. 146, at 2). Though the Arkansas Supreme Court in *Wagner* stated that the component-parts doctrine has not yet been adopted in Arkansas, it applied the doctrine to the facts of the case. 370 Ark. at 275-77, 258 S.W.3d at 755-56; *see also Davis v. Goodyear Tire & Rubber Co.*, No. 4:09CV00030 JMM, 2010 WL 1710001, at *3 (E.D. Ark. Apr. 26, 2010) (noting that the Arkansas Supreme Court applied the component-parts doctrine to the facts of the case in Wagner); *see also Williams v. MD Cowan, Inc.*, No. 4:09-cv-459-DPM, 2011 WL 4527361, at *4 (E.D. Ark. Sept. 29, 2011) (applying the component-parts doctrine).

11

glass, whether the defect caused harm, and whether Pinkerton "participated in the integration of the component into the design." *Id*.

Other cases applying the component-parts analysis from *Wagner* are instructive. In *Davis v. Goodyear Tire & Rubber*, the district court granted a motion for summary judgment for defendant Goodyear who manufactured a rubber hose that was then fitted into a defective hose-fitting assembly. No. 4:09CV00030 JMM, 2010 WL 1710001, at *1 (E.D. Ark. Apr. 26, 2010). In *Davis*, the court found that though Goodyear supplied one component of the hose-fitting assembly, it did not supply the other parts of the defective hose-fitting assembly. Nor did it design or otherwise participate in the fabrication of the hose-fitting assembly. *Id*. at 1, 3 (holding that there was no issue of material fact because the plaintiffs could not show that the hose supplied by Goodyear was itself defective).

In *Williams v. MD Cowan*, the defendant Rig Tech manufactured drawworks (a hoisting system) for a drilling rig that malfunctioned. No. 4:09-cv-459-DPM, 2011 WL 4527361, at *1 (E.D. Ark. Sept. 29, 2011). The *Williams* court denied summary judgment against Rig Tech, reasoning that there was a genuine dispute as to whether Rig Tech's drawworks were defective themselves and how much involvement Rig Tech had in designing the drawworks for integration into the drilling rig. *Id*. at 4.

In the instant case, there is a dispute as to whether the trailer underride guard design, including the gusset designed by Separate Defendant and manufactured by Defendant Enterprises, was defective.[4] However, unlike in *Wagner* and *Williams*, there is no dispute as to whether Defendant Enterprises "participated in the integration of the component into the design." *See*

---

[4] This Court has previously found that Plaintiffs' expert witness has presented sufficient evidence that the trailer guard design was defective to create a genuine question of material fact. (ECF No. 206). Specifically, the Court found that whether the bolt size, gusset design, and two-post design were defective and caused Plaintiffs' injury are questions for the jury.

*Wagner*, 370 Ark. at 277, 258 S.W.3d at 756. Both Plaintiffs and Defendant Enterprises agree that Defendant Enterprises only fabricated the underride guard according to Separate Defendant's designs. (ECF No. 147, at 3).

The Eighth Circuit, examining a products liability case under Minnesota law, addressed whether a "manufacturer is liable for a design defect if it follows a customer's specifications in manufacturing a finished product." *Thompson v. Hirano Tecseed Co.*, 456 F.3d 805, 809, 811 (8th Cir. 2006) (holding that summary judgment was inappropriate because there was a material question of fact as to whether the defendant participated in designing the component part it supplied). It found that the general rule across states is that "when a product is manufactured according to specifications, the manufacturer is not liable for design defects, unless the specifications are so obviously dangerous that they should not be followed." *Id*. at 809 (collecting cases). This rule is consistent with the Restatement (Second) of Torts § 404, comment a (1965 ("The contractor is not subject to liability if the specified design . . . turns out to be insufficient to make the chattel safe for use, unless it was so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe.").

As noted above, there is no dispute as to whether Defendant Enterprises designed the instant underride guard components or participated in the integration of the components into the trailer design. All parties agree that it did not. Thus, applying *Wagner*, *Davis*, *Williams*, and the general rule identified by the Eighth Circuit, the Court finds that summary judgment is appropriate on the design defect claim. Accordingly, summary judgment is granted on the products liability issue as to Defendant Enterprises.

### B. Negligence

Negligence "is the failure to do something that a reasonably careful person would do, or

the doing of something that a reasonably careful person would not do." *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, at 4, 369 S.W.3d 717, 719 (2010). The essential elements of a negligence claim are: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries. *See Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411, 416 (2004). The burden is always on the plaintiff; negligence is never assumed. *See Yanmar Co. v. Slater*, 2012 Ark. 36, at 16, 386 S.W.3d 439, 449 (2012).

Negligence may be established by direct or circumstantial evidence, but a plaintiff may not rely on inferences based on conjecture or speculation. *See Ark. Kraft, a Div. of Green Bay Pkg. v. Cottrell*, 313 Ark. 465, 471, 855 S.W.2d 333, 337 (1993). Sufficient evidence is not present if a factfinder is merely given a choice of possibilities that requires the factfinder to guess as to a cause. *Id*. "The mere fact of an accident does not give rise to an inference of negligence." *Yanmar Co.*, 2012 Ark. at 16, 386 S.W.3d at 449.

Defendant Enterprises contends that its only connection to the case is as the fabricator of the rear underride guard. (ECF No. 134, at 13). Defendant Enterprises argues that Plaintiffs have failed to offer any evidence showing that Defendant Enterprises improperly manufactured the rear underride guard and that, instead, Plaintiffs merely offer conclusory opinions that the guard was inherently defective and unreasonably dangerous. (ECF No. 134, at 12). Defendant Enterprises asserts that the rear underride guard was fabricated to be in line with Separate Defendant's design specifications, and that it was installed to the trailer by Separate Defendant using bolts selected by Separate Defendant. (ECF No. 134, at 12). Further, Defendant Enterprises argues that Plaintiffs fail to show that the fabrication conditions of the rear underride guard had any impact on the collision. (ECF No. 134, at 15).

In response, Plaintiffs contend that they can establish Defendant Enterprises should be

liable for Separate Defendant's negligence because of Defendant Enterprises' knowledge of the intended and actual use of its components by Separate Defendant. (ECF No. 145, at 2). Plaintiffs assert that Defendant Enterprises fabricated a component of the rear underride guard that was used to assemble a defective trailer, causing a "direct and foreseeable causal connection between its fabrication decisions and the damages" suffered by Plaintiffs. (ECF No. 146, at 6). Plaintiffs argue that the "evidence demonstrates that the subject [rear underride guard] was defective and inherently dangerous, increasing and making the chance of harm highly likely." (ECF No. 146, at 6). Plaintiffs go on to claim that although "the specific circumstances of the crash and victim(s) could not be identified with exact precision at the time [Defendant Enterprises] manufactured the [rear underride] guard, sooner or later an injury and/or death was bound to happen, and the [rear underride] guard was bound to fail. (ECF No. 146, at 6). Plaintiffs then continue by arguing that it "was not a matter of 'if', but rather 'when.'" (ECF No. 146, at 6).

The Court is unpersuaded that Plaintiffs' negligence claim should survive summary judgment. Plaintiffs do not provide any proof that Defendant Enterprises breached its duty to Plaintiffs. The Arkansas Supreme Court has stated that the question of what duty is "owed a plaintiff alleging negligence is always a question of law and never one for the jury." *Yanmar*, 2012 Ark. at 16, 386 S.W.3d at 449. To prove negligence, the plaintiff must show "that the defendant has failed to use the care that a reasonably careful person would use under circumstances similar to those shown by the evidence in the case." *Wagner*, 370 Ark. at 273, 258 S.W.3d at 754.

Plaintiffs fail to identify proof of a negligent act or omission by Defendant Enterprises such that a reasonable jury could find that Defendant Enterprises breached its duty to exercise reasonable care in the manufacture of the trailer underride guard. Plaintiffs assert that Defendant

15

Enterprises is negligent because it "knew (or should have known) that supplying an underride guard with inherent defects, given its intended use, would likely result in injury." (ECF No. 146, at 3).

The issue before the Court is what duty to apply when a defendant manufactures a product based on the design specifications given by another party. The Restatement (Second) of Torts § 404, comment a (1965) is again instructive. When an "employer furnishes [a] plan, design, or materials" to an independent contractor, the "contractor is not subject to [negligence] liability if the specified design . . . turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe." Restatement (Second) of Torts § 404, comment a (1965).

Plaintiffs argue that the design specifications Defendant Enterprises followed were "so obviously bad" that Defendant Enterprises should have realized that there was a grave chance that the underride guard would be dangerously unsafe. (ECF No. 146, at 4). The Court finds this argument unpersuasive. Plaintiffs produce no evidence that the design specifications that Defendant Enterprises followed were "so obviously bad" that Defendant Enterprises would realize there was a "grave chance" the gusset design provided by Separate Defendant would be dangerously unsafe. In fact, the representative of Separate Defendant testified in a deposition that the designs provided to Defendant Enterprises met both the Canadian and U.S. Department of Transportation standards. (ECF No. 145-1, at 65-66). Though evidence of adherence to safety standards does not conclusively prove lack of defect or negligence, the fact that the designs met industry standards tends to negate that there were red flags that the designs provided by Separate Defendant were "obviously bad." *See Forrest City Mach. Works, Inc.*, 273 Ark. at 38, 616 S.W.2d at 723. Accordingly, summary judgment is granted for Defendant Enterprises on the negligence

issue.

### C. Punitive Damages

The Court grants summary judgment for Defendant Enterprises on both Plaintiffs' products liability and negligence claims. Thus, it is unnecessary for the Court to address Defendant Enterprises' alternative argument that it is entitled to summary judgment on Plaintiffs' claim for punitive damages.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant Enterprises' Motion for Summary Judgment (ECF No. 133) should be and hereby is **GRANTED**. All claims against Defendant Enterprises are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 30th day of September, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge